[L. A. No. 9141. In Bank.—December 24, 1926.]

In the Matter of the Estate of CLARK PARKER, Deceased. HENRY A. STEARNS et al., Appellants, v. LEON M. ABBOTT, as Executor, etc., Respondent.

[1] ESTATES OF DECEASED PERSONS — EXECUTORS, ADMINISTRATORS, AND TESTAMENTARY TRUSTEES—EMPLOYMENT OF ATTORNEY—COMPENSATION.—An executor, administrator, or testamentary trustee who is himself an attorney may properly employ another attorney to render the necessary legal services for the estate, and he may be entitled to an allowance out of the estate for the value of such legal services; but if the executor, administrator, or testamentary trustee, being himself a practicing attorney, elects to act as his own attorney in the performance of the legal services incident to the administration of the estate, the general rule is that he will not be entitled to an allowance against the estate for his professional services, in the absence of some statutory provision entitling him thereto.

[2] ID.—ATTORNEY AS EXECUTOR—EMPLOYMENT OF OWN FIRM—RULE. An executor or administrator who is himself a lawyer may be allowed a credit for fees to be paid a law firm of which he is a member, if it was agreed between him and his partners that he was not to share in the moneys to be received by the firm for its services; but if he was to participate in the compensation to be earned by his firm, the same principles and policies which are opposed to the allowance of additional compensation to an executor or administrator for legal services rendered by him individually as an attorney at law are equally opposed to an allowance of compensation to his law firm.

[3] ID.—ABSENCE OF AGREEMENT — PRESUMPTIONS.—In the absence from the record of any express agreement between an attorney acting as executor of an estate and his law partners acting as attorneys for the executor as to whether the executor was or was not to participate in the compensation to be received by his firm for its legal services, the presumption is that the executor was to share the compensation with his partners, and, under such circumstances, an order allowing such firm of lawyers compensation for extra legal services is erroneous.

---

1. Extra compensation for legal services rendered by executor or administrator, notes, 36 A. L. R. 748; 18 A. L. R. 635. See, also, 11 Cal. Jur. 1173, 1180; 11 R. C. L. 231.

2. See 11 Cal. Jur. 1181.

[4] ID.—SECTION 1618, CODE OF CIVIL PROCEDURE.—The amendment of 1925 to section 1618 of the Code of Civil Procedure removing the limit upon the amount which may be allowed an executor or administrator as additional compensation for an extraordinary service performed by him cannot be relied upon to sustain an order for such compensation made prior to said amendment, as this would give the amendment a retroactive effect.

[5] ID.—CHARACTER OF SERVICES.—The study by an executor and his counsel of the stock market in order to be able to make an advantageous sale of shares of stock belonging to the estate is not a professional service for which a lawyer may make a charge payable out of the estate, but is the performance of the ordinary duty of the executor in selling the property of his testator.

(1) 24 C. J., p. 108, n. 38, p. 109, n. 42; 39 Cyc., p. 339, n. 44. (2) 24 C. J., p. 108, n. 39.    (3) 24 C. J., p. 108, n. 39, p. 988, n. 25, p. 989, n. 33; 39 Cyc., p. 296, n. 20.    (4) 24 C. J., p. 988, n. 25; 36 Cyc., p. 1205, n. 13, p. 1212, n. 84, p. 1223, n. 65, 67.    (5) 24 C. J., p. 109, n. 41.

APPEAL from an order of the Superior Court of Los Angeles County settling the final account of an executor and allowing extra compensation to the attorneys for the executor. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

Merriam, Rinehart & Merriam for Appellants.

Bates, Nay, Abbott & Dane, Henry O. Wheeler and Henry O. Wackerbarth for Respondent.

FINLAYSON, J.—Three residuary legatees under the will of Clark Parker, deceased, have appealed from that part of an order settling the executor's final account which allows $40,000 as extra compensation to the attorneys for extraordinary services alleged to have been rendered by them in the probate proceedings.

The respondent, Leon M. Abbott, is the executor of the will, appointed as such by the superior court for Los Angeles County. Mr. Abbott is a member of the law firm of Bates, Nay, Abbott & Dane, a firm of attorneys practicing law in the state of Massachusetts with offices in the city of Boston.

4. See 23 Cal. Jur. 629.

He employed this firm and two Los Angeles lawyers, Messrs. Henry O. Wheeler and Henry O. Wackerbarth, to act as his attorneys in the performance of all the legal services incident to the probate proceedings. When the estate was ready for distribution respondent filed his final account, report, and petition for distribution. In the account he claimed credit for all of the statutory commissions and all of the extra compensation to which he possibly could be entitled as executor under the statute as it then read; he also claimed a credit for all of the statutory commissions to which his attorneys could be entitled, and an additional sum as extra compensation to them for extraordinary legal services alleged to have been performed by them. The specific amounts for which he thus claimed credit in his final account are: (1) $3,147.13, the regular commissions due him under section 1618 of the Code of Civil Procedure for ordinary executorial services; (2) $1,573.57 (one-half of the regular commissions) as extra compensation for extraordinary services performed by him as executor; (3) $3,147.13, the regular attorneys' commissions allowable under sections 1618 and 1619 for legal services rendered in conducting the ordinary probate proceedings; and (4) $50,000 as further compensation to the attorneys for extraordinary legal services alleged to have been performed by them. In due time the residuary legatees who have taken this appeal appeared in the court below and objected to the allowance of any amount for extraordinary legal services. Thereafter the court made an order settling respondent's final account. The order allows the items of $3,147.13 and $1,573.57 as credits, respectively, for respondent's regular commissions and extra compensation for extraordinary services performed by him as executor, the item of $3,147.13 as attorneys' fees for the services of the attorneys in conducting the ordinary probate proceedings, and the sum of $40,000 as further compensation to the attorneys for extraordinary legal services performed by them. Included in this item of $40,000 is an undetermined amount representing the share of respondent's law firm in the extra compensation for extraordinary services. That is to say, the amounts due respectively to respondent's law firm and to the two local attorneys for such extraordinary services are not segregated but are lumped in one sum. It is from the al-

lowance of this credit of $40,000 that this appeal is prosecuted.

At all the times when respondent performed his services as executor, and, indeed, at the time when the court made its order settling the final account and decreeing distribution, section 1618 of the Code of Civil Procedure provided that an executor, when no compensation is provided by the will or he renounces all claims thereto, shall be allowed, as compensation for his ordinary services, commissions at certain specified rates upon the amount of the estate accounted for by him, and that "such further allowance may be made as the court may deem just and reasonable for any extraordinary service," but that the total amount which the court may allow for extraordinary executorial services shall not exceed one-half the amount of commissions allowed the executor for his ordinary services. By section 1619 it is provided that attorneys for executors and administrators shall be allowed as fees for conducting the ordinary probate proceedings the same commissions that are allowed to executors and administrators under section 1618, and that for any "extraordinary services" rendered by the attorneys, such as sales or mortgages of real estate and other specifically designated kinds of professional services, "such further allowance may be made as the court may deem just and reasonable." By an amendment which became effective July 24, 1925 (Stats. 1925, p. 624)—two and one-half months after the entry of the order settling the final account and decreeing distribution—section 1618 was so amended that, as it now reads, no limitation is placed upon the amount of the extra compensation which may be allowed an executor for his extraordinary services.

[1] An executor, administrator, or testamentary trustee who is himself an attorney at law may properly employ another attorney to render the necessary legal services for the estate, and he may be entitled to an allowance out of the estate for the value of such legal services. (*Estate of Graham,* 187 Cal. 222 [18 A. L. R. 631, 201 Pac. 456].) But if the executor, administrator, or testamentary trustee, being himself a practicing lawyer, elects to act as his own attorney in the performance of the legal services incident to the administration of the estate, the general rule is that he will

not be entitled to an allowance against the estate for his professional services, in the absence of some statutory provision entitling him thereto. (*Collier* v. *Munn*, 41 N. Y. 143; *Lent* v. *Howard*, 89 N. Y. 170; *Parker* v. *Day*, 155 N. Y. 383 [49 N. E. 1046]; *In re Wallach*, 164 App. Div. 600 [150 N. Y. Supp. 302], affirmed in 215 N. Y. 622 [109 N. E. 1094]; *Willard* v. *Bassett*, 27 Ill. 38 [79 Am. Dec. 393]; *Hough* v. *Harvey*, 71 Ill. 72; *Whittemore* v. *Coleman*, 239 Ill. 450 [88 N. E. 228]; *Taylor* v. *Wright*, 93 Ind. 121; *Doss* v. *Stevens*, 13 Colo. App. 535 [59 Pac. 67]; *Slusher* v. *Weller*, 151 Ky. 203 [151 S. W. 684]; *Holding* v. *Allen*, 150 Tenn. 669 [36 A. L. R. 743, 266 S. W. 772]; notes to *Estate of Graham, supra,* in 18 A. L. R., p. 635 et seq., and notes to *Holding* v. *Allen, supra,* in 36 A. L. R., p. 748 et seq. See, also, *Estate of Runyon,* 125 Cal. 195, 197, 198 [57 Pac. 783], where the principle enunciated in the above cases is recognized with approval.) This rule is supported by the weight of authority (*Holding* v. *Allen, supra*); and though there is considerable apparent and perhaps real conflict of authority upon the subject (24 C. J., p. 108), we deem it a sound and wholesome doctrine, founded upon reasons of public policy. In *Estate of Graham, supra,* this court says: "If he [the administrator] did perform such services which were not in the line of his duty as administrator, he might not be permitted to receive compensation, but the reason would be one of public policy forbidding him to be his own employer." In *Stanes* v. *Parker,* 9 Beav. 385 [50 Eng. Reprint, 392], it was said: "The safety of the public has been justly thought to require the rule now clearly established, that, although a trustee, being a solicitor, may appoint another solicitor to execute the professional business relating to the trust, yet if he does it himself, he shall not be allowed to charge for his professional services." See, also, *In re Bank of Niagara,* 6 Paige (N. Y.), 213, 215. In *Broughton* v. *Broughton,* 5 De Gex, M. & G. 160 [43 Eng. Reprint, 831], the Lord Chancellor said: "The rule applicable to the subject has been treated at the Bar as if it were sufficiently enunciated by saying that a trustee shall not be able to make a profit of his trust, but that is not stating it so widely as it ought to be stated. The rule really is, that no one who has a duty to perform shall place himself in a

situation to have his interests conflicting with that duty; and a case for the application of the rule is that of a trustee himself doing acts which he might employ others to perform, and taking payment in some way for doing them. As the trustee might make the payment to others, this Court says he shall not make it to himself; and it says the same in the case of agents, where they may employ others under them. The good sense of the rule is obvious, because it is one of the duties of a trustee to take care that no improper charges are made by persons employed for the estate. It has been often argued that a sufficient check is afforded by the power of taxing the charges, but the answer to this is that that check is not enough, and the creator of the trust has a right to have that, and also the check of the trustee. The result therefore is, that no person in whom fiduciary duties are vested shall make a profit of them by employing himself, because in doing this he cannot perform one part of his trust, namely, that of seeing that no improper charges are made. The general rule applies to a solicitor acting as a trustee.''

[2] An executor or administrator who is himself a lawyer may be allowed a' credit for fees to be paid a law firm of which he is a member, if it was agreed between him and his partners that he is not to share in the moneys to be received by the firm for its services. (*Estate of Schillaber,* 1 Cof. Prob. Dec. 101.) But if he is to participate in the compensation to be earned by his firm, then the same principles and policies which are opposed to the allowance of additional compensation to an executor or administrator for legal services rendered by him individually as an attorney at law are equally opposed to the allowance of compensation to his law firm. (*Taylor* v. *Wright, supra; Liles' Succession,* 24 La. Ann. 490; *Needham* v. *Needham,* 34 Idaho, 193 [200 Pac. 346]; *Collins* v. *Carey,* 2 Beav. 128 [48 Eng. Reprint, 1128]; *Christopher* v. *White,* 10 Beav. 523 [50 Eng. Reprint, 683]; *Lyon* v. *Baker,* 5 De Gex & S. 622 [64 Eng. Reprint, 1271].) As was said by the Indiana supreme court in *Taylor* v. *Wright, supra:* ''To hold that an executor or administrator, while he may not be compensated out of the estate for his individual legal services, can share with a partner compensation for legal services rendered the estate

by the firm, would be suggesting an easy method for evading the law." [3] The record before us is silent as to the existence of any express agreement between respondent and his partners as to whether he was or was not to participate in the compensation to be received by his firm for its legal services. In the absence of any such showing the presumption is that respondent was to share the compensation with his partners. (*Needham* v. *Needham, supra; Liles' Succession, supra.*)

From the foregoing it follows that the court erred in allowing the item of $40,000, unless justification therefor may be found in some provision of the statute. Section 1618 of the Code of Civil Procedure, as we have seen, provided, at the time of the rendition of the professional services, that an executor shall be allowed certain specified commissions for his ordinary services, and that, for any extraordinary service performed by him as executor, such "further allowance may be made as the court may deem just and reasonable," not exceeding one-half of the commissions allowable for his ordinary executorial services. Cases are to be found in some jurisdictions which hold that where it is provided by statute that executors or administrators may be allowed extra compensation for extraordinary services, an executor or administrator who, being an attorney, performed legal services for the estate may be allowed, in addition to the usual commissions attached to his office, a further compensation for his legal services. (*Sloan* v. *Duffy,* 117 Wis. 480 [94 N. W. 342]. See, also, *In re Wilson's Estate,* 83 Neb. 252 [119 N. W. 522], and *Davidson* v. *Story,* 106 Ga. 799 [32 S. E. 867].) In *Sloan* v. *Duffy, supra,* the Wisconsin court holds that legal services performed by an executor who is an attorney are "extraordinary services" within the meaning of a statute providing that for all "extraordinary services" rendered by an executor the court shall make such an allowance over and above the statutory fees as might be adjudged reasonable. The theory underlying these cases, tacitly assumed rather than expressed, seems to be this: The only reason for ever holding that a lawyer-executor may not charge the estate for legal services rendered by him is that, if the statute makes no provision for extra compensation, he would, in effect, be charging double commissions, or com-

pensation over and above the statutory fees to which he is entitled as an executor, if he were to charge the estate for legal services rendered by him in his professional capacity. This theory completely ignores the fact that the fundamental basis for the rule which we have been considering is one of public policy—that, as was said by the Lord Chancellor in *Broughton* v. *Broughton, supra,* it is a rule which is grounded upon the principle that a trustee shall not "place himself in a situation to have his interests conflicting with" his duty as a fiduciary. The law, for wise reasons, forbids a person occupying a fiduciary relation to assume a position which might possibly be adverse to his duties. It is against public policy to permit such a person to be placed where he might be tempted to betray his trust. (*Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 190, 191 [135 Pac. 496]; *Sims* v. *Petaluma Gas Light Co.,* 131 Cal. 659 [63 Pac. 1011]; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 365 [104 Am. St. Rep. 42, 78 Pac. 550].) "When one undertakes to deal with himself in different capacities—individual and representative—there is a manifest hostility in the position he occupies. His duty calls upon him to act for the best interests of his principal; his self-interest prompts him to make the best bargain for himself. Humanity is so constituted that when these conflicting interests arise the temptation is usually too great to be overcome; and duty is sacrificed to interest." (*Western States Life Ins. Co.* v. *Lockwood, supra.*) It clearly is the duty of every executor, when engaging counsel to render professional services for the estate, to employ the best legal talent available for the stipulated compensation. But he would place himself in a position where there would be a clash between his own personal interest and his duty to employ the ablest counsel obtainable for the agreed compensation if, being himself a lawyer, he should undertake to perform that service himself with the intention of charging the estate therefor, or if, being a member of a law firm and sharing in the fee to be earned, he should employ his firm to render the necessary professional services. Again, it is the duty of every executor to oppose any charge which the attorney or attorneys employed by him might make against the estate for extraordinary legal services, if there be no substantial ground for the claim that

the services were indeed extraordinary. But his personal interest would conflict with this duty if the services were rendered by his own law firm and he is to share in the earnings. These examples will suffice to show how an executor might be tempted to look with too friendly an eye upon improper claims for legal services if we were to relax the salutary rule announced in such cases as *Collier* v. *Munn, supra,* merely because our code provides that an executor may be allowed extra compensation for extraordinary service, We are not to be understood as intimating that this respondent, in asking an allowance for extraordinary legal services performed by his law firm and the two local attorneys, was not acting in good faith, or that no extraordinary legal services were in fact performed by the attorneys. We have no reason to suspect bad faith in this case, and the examples which we have instanced of a possible conflict of duty with personal interest have been cited by us solely for the purpose of showing why it is that public policy should be regarded as the basic reason for the general rule that a lawyer-executor may not charge the estate for his own or his firm's professional services.

But even if public policy had nothing whatever to do with the rule, and even if it should be held that, where the statute allows an executor extra compensation for his extraordinary services, a lawyer-executor may be allowed extra compensation for extraordinary legal services performed by him or by his law firm, nevertheless respondent still would fail to uphold the propriety of the credit for $40,000. As we already have stated, a portion of that sum—how much does not appear—represents the share claimed by respondent's law firm for its part in the extraordinary legal services; and the balance, whatever it may be, represents the share of the two local attorneys for their part in such services. If, therefore, this item of $40,000 were allowed, then respondent, as one who is entitled to participate in the profits earned by his law firm, would receive some part of this extra compensation. But in the item of $1,573.57 allowed him as extra compensation over and above his commissions for ordinary executorial duties, he already has been allowed all of the extra compensation to which, as executor, he possibly can be entitled under section 1618 as it read at the time when

the services were rendered.  It follows, therefore, that any allowance of compensation to his law firm for extraordinary legal services, or even for ordinary legal services, must inevitably result in respondent receiving more than was allowable to him as executor under section 1618 prior to its amendment in 1925.  Therefore, even if we were to give to that code section the same effect which the Wisconsin court in *Sloan* v. *Duffy, supra,* gave to a similar statutory provision, the allowance of this item of $40,000 would be improper nevertheless.

[4]  Respondent seeks to avoid this conclusion by arguing that his right to extra compensation must be measured by section 1618 as it now reads, and that, since that section no longer places a limit upon the amount which may be allowed an executor or administrator as additional compensation for an extraordinary service performed by him, the extra compensation which already has been allowed respondent for his extraordinary services as executor presents no obstacle to an allowance of the item of $40,000, if the reasoning of the Wisconsin case be followed.  Respondent takes the position that if, subsequent to a judgment appealed from and prior to a decision by the appellate court, there be an alteration or repeal of the law applicable to the rights of the parties, the appeal must be decided according to the then existing law—citing *United States* v. *Schooner Peggy*, 5 U. S. (Cranch) 102 [2 L. Ed. 49, see, also, Rose's U. S. Notes], and a number of other analogous cases.  The cases cited by respondent are not applicable to the situation here presented, and there is no merit in his contention.  A decision on the rights of the parties to this appeal in accord with the provisions of section 1618 as amended in 1925 would give to that amendment a retroactive effect.  But that effect we may not give for the reason that no part of the Code of Civil Procedure "is retroactive unless expressly so declared." (Code Civ. Proc., sec. 3; *Central Pac. R. R. Co.* v. *Shackelford,* 63 Cal. 264; *Estate of Frees,* 187 Cal. 155 [201 Pac. 112].)  The amendment in question, to the extent that it removes all limitation upon the amount which may be allowed to executors and administrators as extra compensation for extraordinary services performed by them, has the effect of imposing new and additional liabilities upon estates in

probate. A statute will not be given a retroactive construction by which it will impose liabilities not existing at the time of its passage. "Laws which create new obligations, or impose new duties, or exact new penalties because of past transactions, have been universally reprobated by civil and common law writers, and it is to be presumed that no statute is intended to have such effect unless the contrary clearly appears." (*Pignaz* v. *Burnell*, 119 Cal. 160 [51 Pac. 48].) In *Estate of Daly*, 180 App. Div. 307 [167 N. Y. Supp. 229], affirmed without opinion in 223 N. Y. 671 [119 N. E. 1037], it is held that an amendment to section 2753 of the New York Code of Civil Procedure requiring the surrogate to allow to an executor, who is also an attorney and who has rendered legal services in connection with his executorial duties, reasonable compensation for those services, is not retroactive so as to permit an allowance for services rendered prior to the amendment.

Though the part of the order appealed from must be reversed for the reason that it allows the executor, indirectly, compensation which should not be charged against the estate, it does not necessarily follow that the local attorneys, Messrs. Henry O. Wheeler and Henry O. Wackerbarth, are not entitled to extra compensation for any extraordinary legal services which they may have performed.

[5] In his petition for an allowance of extra compensation for the attorneys, respondent describes many different kinds of services, a number of which unquestionably cannot be classified as extraordinary legal services. Take one example, for illustration: It is alleged that respondent and his counsel studied the stock market in order to be able to make an advantageous sale of certain shares of stock belonging to the estate. This is not a professional service for which a lawyer may make a charge payable out of the estate. It is but the performance of an ordinary duty of the executor in selling the property of his testator. The order from which the appeal was taken does not show what services were made the basis for the allowance of the $40,000. From the record before us it is not possible to determine what part, if any, of the $40,000 was allowed for services which are not extraordinary legal services within the meaning of section 1619 of the code. That this situation, in the event of a

second appeal, may not again arise, the lower court, on the going down of the *remittitur*, should, if counsel be so advised, entertain a motion to strike from the petition all references to services which are not "extraordinary" legal services within the meaning of section 1619; or, as an alternative, that court, on the retrial of the issues involving the claim of the two local attorneys for extra compensation, should expressly find, either by appropriate recitals in the order or otherwise, the precise services performed by the local attorneys, if any, which it finds to be extraordinary.

The part of the order appealed from is reversed, and the matter is remanded to the lower court for a new trial, in accordance with this opinion, upon the issues presented by respondent's petition for extra compensation to the attorneys.

Shenk, J., Curtis, J., Richards, J., Sullivan, J., Waste, C. J., and Seawell, J., concurred.